7th Cir App. Ct.

U.S.C.A. – 7th Circuit
RECEIVED
JUL 30 2020 PNR

Rasho v. Doe, IDHS et al
3:20-cv-00607-JPG

7-26-20

## Notice of Appeal

I am mentaly ill Inmate who is Appealing Jument of Judg J. Phil Gilbert order when he dismied my Lawysuit cause I had 3 strike. My life is on the line and I need help. The other Lawysuits I didn't know how to file Paper and they got dismiss. I need Lawyer help me.

Thank you filing Fed. R.C.P. Appeal see my Exhibits.

# IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
## PULASKI COUNTY, ILLINOIS

THE PEOPLE OF THE STATE OF )
ILLINOIS, )
    Plaintiff, )
)
vs. ) NO. 2020-CF-12
)
ASHOOR RASHO, )
    Defendant. )



FILED
JUN 2 2 2020
STEPHANIE L. CRAIN
Clerk of the Circuit Court-First Judicial Court
Pulaski County, Illinois

## ORDER FINDING DEFENDANT UNFIT TO STAND TRIAL AND REMANDING DEFENDANT TO DEPARTMENT OF HUMAN SERVICES

THIS CAUSE having come before the Court of June 22, 2020, for a fitness hearing pursuant to 725 ILCS 5/104-16, and the People of the State of Illinois being represented by the Pulaski County State's Attorney, and the defendant being present and represented by his attorney, Mr. Patrick S. Duffy, and the Court having received and reviewed a written report of an examination of the defendant prepared by Mr. Jeffrey Webb, M.A., L.C.P.C., and Q.M.H.P. and the parties having stipulated to the qualifications of Mr. Webb as an expert in the field of psychology, and having further stipulated that if called as a witness, Mr. Webb would testify to the contents of his report, and the Court having reviewed the pleadings of record, the law made and provided for in such cases, and being otherwise fully advised in the premises,

**THE COURT FINDS THAT:**

A. It has jurisdiction of the parties hereto and the subject matter hereof.

B. The defendant is unfit to stand trial but there is a substantial probability that with treatment, the defendant can be restored to fitness within a year,

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The defendant shall be immediately transferred to the custody of the Department of Human Services.

2. The defendant shall undergo treatment for the purpose of making the defendant fit to stand trial.

3. The defendant shall be provided a course of treatment designed to attain fitness, and a treatment plan shall be created by the Department of Human Services, and submitted to the Court within thirty (30) days of this order.

4. Pursuant to 725 ILCS 5/104-17, the treatment plan shall include:

   a. a diagnosis of the defendant's disability;

   b. a description of the treatment goals with respect to rendering the defendant fit, a specification of the proposed treatment modalities, and an estimated timetable for the attainment of the goals; and,

   c. an identification of the person in charge of supervising the defendant's treatment.

5. The treatment plan shall also address the issue and make recommendations as to the least restrictive form of treatment therapeutically appropriate and consistent with the treatment plan.

6. Pursuant to 725 ILCS 5/104-17(d), the Office of the Circuit Clerk of Pulaski County, Illinois, shall provide the following to the Department of Human Services:

   a. a certified copy of the order to undergo treatment;

   b. the county and municipality in which the offense was committed; and

   c. a copy of the arrest report, criminal charges, arrest record, jail record, and the report prepared pursuant to 725 ILCS 5/104-15 (being Mr. Webb's written report).



7. This matter shall be set down for a status hearing on  8-3-20         ,
2020, at the hour of 9:00 a.m.

ENTERED this 22nd day of June, 2020.

---

                                                            CIRCUIT JUDGE WILLIAM J. THURSTON

Ex A

Little Egypt Counseling
200 Evergreen Drive
Anna, IL 62906

(618) 614-3280

# MENTAL HEALTH EVALUATION
## 06/03/2020

**CLIENT:** Ashoor Rasho
**DOB:** 06/06/1975
**CURRENT AGE:** 44 (at time of testing)

Evaluation Instruments:
    The Neurobehavioral Cognitive Status Examination (COGNISTAT)
    City of Hope Human Behavior Questionnaire
    Minnesota Multiphasic Personality Inventory-2 (MMPI-2)
        (Correctional Interpretive Report)

   Mr. Absoor Rasho is a 44 year old male who is presently incarcerated at Pulaski County Detention Center in Ullin, Illinois. Prior to his current incarceration, he had been detained by Immigration and Custom Enforcement (ICE), due to an uncertain status in his US citizenship.
   According to information obtained during interviews with the client and questionnaire responses, Mr. Rasho and his family entered the United States as refugees from Iraq in 1979 and had initially resided in Texas, but had later moved to Illinois. At some point between the ages of 7 and 8 years old, and while still living in Texas, Mr. Rasho reports that he had been "bitten by a rat", which resulted in his hospitalization. He states that during that time he was hospitalized for several days, but he eventually recovered and returned to his family. However, he says that after his return he was "different" and began to experience extreme behavioral and emotional difficulties, such as excessive hyperactivity, destructive behaviors, and he began engaging in impulsive behaviors. These behaviors contributed to his first arrest at the age of 8 for curfew violation and by the age of 12 he was sentenced to a juvenile detention facility where he remained for 3 years. He reports that as an adult he was first incarcerated in an adult jail when he was 17 and again when he was 18, then again when he was 20 and 21 on various theft and burglary charges. In 1996, Mr. Rasho was convicted of robbery and, other than a brief period of probation, he has been incarcerated or detained since that time. He stated that he had once been discharged to a transitional facility in Dixon, Illinois, but that he was "made to leave" and following a short stay with his brother in the Chicago area, he had "cut off my band" and had went to Texas to see his grandmother. This eventually resulted in his return to custody and his ICE detention. It is during his detention that he obtained his current charges.

## EDUCATIONAL / OCCUPATIONAL / SOCIAL BACKGROUND

Mr. Rasho reports that he attended school up to the 8th grade, but due to persistent behavioral difficulties he discontinued attending. It was not until the age of 23 while in prison, he says, that he learned to read and write and he continues to have some deficits with reading and comprehension.

Mr. Rasho says that he has never really had a formal occupation due to his extensive periods of incarceration. Reportedly, he has no long-term friends and he has very little, if any, contact with his family. He states that he does not get along well with other people and that even any social relationships that were formed in jail usually were short lived and nearly always ended with some type of confrontational behavior. Although he recognizes that personal interactions with others is a necessity within the correctional setting, he says that the vast majority of the time he would prefer being by himself with very little contact with others.

## COGNISTAT

Mr. Rasho was administered the Neurobehavioral Cognitive Status Examination (COGNISTAT) in order to assess several key areas of cognition as an indication of his mental functioning ability and degree of awareness. This examination measures the fundamental areas of (1) Level of Consciousness, (2) Orientation, (3) Attention, (4) Language, (5) Construct Abilities, (6) Memory, (7) Calculations and (8) Reasoning. All of Mr. Rasho's assessment scores fell into a normal range except for Memory, Calculations and the Reasoning subcategory of Similarities. While his low score on the Calculation portion may be attributed to his lack of formal education, his slightly lower than average results within the Memory section may indicate some difficulties with his immediate recall abilities. Most importantly, though, within the Reasoning category his extremely low results in the Similarities subsection would seem to show that even though he appears unable to comprehend abstract thoughts and ideas, his Judgment seems to be intact.

In general, then, his COGNISTAT profile indicates deficits in being able to understand concepts which are not presented in concrete terms. For example, according to his test results, Mr. Rasho would have difficulty carrying out mutli-level abstract tasks such as troubleshooting a complex problem on his own, however if given smaller, step-by-step instructions, he might be able to complete the task.

## MMPI -2 (Minnesota Multiphasic Personality Inventory -2) (Corectional Version)

The MMPI-2 consists of 567 true or false items that are statistically connected to specific mental health symptoms, personality types or clusters of characteristics found within certain mental health diagnoses as presented by the Diagnostic and Statistical Manual of Mental Disorders (IV or 5). It is from these presenting symptoms that a formal diagnoses is established. Although there are a wide variety of interpretive clusters and combinations, the basic MMPI-2 is divided into 3 Validity Scales and 10 Clinical Scales. The Validity Scales reflect the degree to which the person answers the items consistently, indicating overall truthfulness, exaggerated responses, and underreported symptoms. The

Ex # 2

"Their behavior is frequently unpredictable and socially inappropriate. They may be preoccupied about and ruminate over abstract, theoretical issues, religion and sexual themes. General apathy may permeate all of their behavior. Behavioral regression, autistic thought processes, inappropriate affect and bizarre associations may be seen. Difficulties in concentration and attention, memory deficits and poor judgment are quite common.
These clients are severely and chronically maladjusted even if they are not actively psychotic. They are suspicious and distrustful of others and have poor social skills. They generally feel apathetic, socially isolated and withdrawn."

## CONCLUSIONS and SUGGESTED TREATMENT APPROACHES:

Mr. Rasho appears to be heavily invested in both his physical and mental difficulties as a means of helping to explain his behavior. Albeit, those problems do exist according to testing results and he does not seem to be malingering. At the same time, his evaluations indicate that he may greatly exaggerate his negative pathology as a means of manipulation. Overall, the validity of his self reported history is questionable, but undeniably pathologic.

In the past, he has been diagnosed with a wide variety of psychiatric disorders and has also been prescribed several medications for the symptoms of these conditions. He states that he has taken mental health medication since his childhood for behavioral issues, mood disorder, impulsivity, anxiety or psychotic symptoms. As far as it is known, he has been compliant with taking these and has had no reported period of extended refusal.

The results, then, of current testing and historical information indicates that Mr. Rasho does have an ongoing mental health issue and that he may have several concurrent diagnoses which increase or decline at various times. Diagnostically, his major deficit appears to be a psychotic state, but it is unclear exactly how deep of a deficit this is due to the implied over exaggerations within the testing. A coexisting Antisocial Personality Disorder is excluded by the presence of any psychosis (in accordance with DSM 5 criteria). Therefore, his difficulties interacting with others, relationship issues and disregard for societal rules are regarded as concurrent symptoms of psychosis. Likewise, his mood fluctuations, anxiety and depression may also be encompassed within that realm.

In regard to treatment, it is clear that Mr. Rasho requires a treatment program consisting of ongoing administration of medication in combination with counseling and behavioral therapies. However, because of his difficulties in relating to others, expressed paranoia, and lack of empathy for others, it is doubtful that he would benefit from any type of structured group therapy at this time and would likely benefit the most from routinely scheduled individual counseling. However, the focus of this counseling could be directed toward building relationship skills and social coping mechanisms that could lead to increased socialization. The ultimate goal of this would be a gradual transition to meaningful participation within a Group Therapy treatment environment.

Ex # 4

Clinical Scales are a reflection of psychiatric symptoms that are also endorsed by persons who fall within a certain mental diagnosis.

The MMPI-2 may be administered and scored manually or by copyrighted computer applications. In the case of Mr. Rasho, the items were presented by computer due to time constraints. Additionally, this provided a strictly objective interpretation of the results.

According to the findings of these results, in general, the test results were considered to be invalid for clearly interpreting the findings into a cluster of symptoms that would provide a precise diagnostic picture. Specifically, the results stated:

> "The client responded to the MMPI-2 items in an exaggerated manner, endorsing a variety of inconsistent symptoms and attitudes".

> "While this results in a significant elevation on the F(B) (fake bad) scale, it may also be seen as a reflection of anger, depression, disorganization, confusion, disorientation, unusual thinking and interpersonal difficulties. However, his elevation on the Pa (Paranoia) Scale and the Sc (Schizophrenia) Scale indicate that he apparently holds some unusual beliefs that appear to be disconnected from reality. Additionally, his high score on the PSYC (Psychoticism) Scale suggests that he often feels alienated from others and might experience unusual symptoms such as delusional beliefs, circumstantial and tangential thinking, and loose associations."

> "Inmates with this MMPI-2 pattern tend to have highly disrupted interpersonal relationships. They are usually so preoccupied with their own psychological problems that they are alienated from other people. Mistrust is likely to be a central theme in their adjustment problems. Correctional residents who persistently obtain this type of exaggerated MMPI-2 pattern tend to be quite disturbed and to exhibit a pattern of chronic psychological maladjustment". Many individuals with this MMPI-2 pattern are presenting an unusually large number of psychological symptoms in order to draw attention to the need they feel for immediate psychological help. Some individuals with this exaggerated profile are experiencing serious psychological problems in the form of identity confusion, distortion of their self-concept and difficulty understanding what is going on around them".

With respect to specific MMPI-2 codetypes (paired scale elevations), Mr. Rasho's resulting codetype of 8-6/6-8 is presented by Green (1990) with the following descriptors:

> "Clients with 6-8/8-6 codetypes are likely to evidence a thought disorder with paranoid features as in paranoid schizophrenia. Systematized delusions may be present. Such individuals express significant personal stress through their complaints of tension, anxiety, worry, depression and so on. They are socially isolated and withdrawn. Any social relationship that they do maintain will be tinged with resentment, suspiciousness and hostility."

Ex# 3

DIAGNOSTIC IMPRESSION:

        Schizophrenia, unspecified    F29
        R/O Schizoaffective Disorder    F25.0

_____  06/08/20
Jeffrey Webb, M.A., Licensed Clinical Professional Counselor
Qualified Mental Health Professional

Ex# 5